**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**WANDA C. STRINGER**                                                    **PLAINTIFF**

**V.**                                                    **NO. 4:14-CV-00091-DMB-JMV**

**MOUND BAYOU PUBLIC SCHOOL
DISTRICT, et al.**                                                    **DEFENDANTS**

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

This employment discrimination action is brought by Wanda C. Stringer against her former employer, Mound Bayou Public School District, and Mound Bayou Public School District Board of Trustees, William Crockett, Glen Scott, Anita Smith, Sylvia Coleman, Everlena George, North Bolivar Consolidated School District, North Bolivar Consolidated School District Board of Trustees, and ten unnamed John Does. Before the Court is Defendants' motion for summary judgment. Doc. #25. For the reasons that follow, summary judgment is granted in part and denied in part.

**I
Summary Judgment Standard**

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). In order to grant summary judgment, the Court "must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Id.* at 411–12. To this end, "[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

When the nonmoving party bears the burden of proof at trial, "the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the moving party succeeds in this demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (internal punctuation omitted). When reviewing a motion for summary judgment, the Court must "resolve factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II
## Relevant Facts

### A.  The Principals and the Schools

In 1992, Wanda C. Stringer was hired as a teacher at JFK Memorial High School ("High School") in the Mound Bayou Public School District by District Superintendent William Crockett. Doc. #26-1 at 13. Stringer, who has a doctorate degree, became principal of the High School in 2007. Doc. #29-6 at 2.

At the time Stringer became principal, there were two schools in the District – the High School and IT Montgomery Elementary School ("Elementary School"). Doc. #26-1 at 60; Doc. #29-6 at 2. Johnny Vick, who was hired as a teacher in 2005, became principal of the Elementary School in 2010. Doc. #29-6 at 2 n.2. For part of the time Stringer and Vic were

principals, the Mound Bayou School District Board of Trustees ("Board") was composed of Glen Scott, William Lucas, Anita Smith, Sylvia Coleman, and Evelina[1] George. *See* Doc. #29-8 at 1.

Both the High School and the Elementary School receive accreditation ratings from the Mississippi State Department of Education based on performance over the academic year. Doc. #26-1 at 14–15. The possible levels, from least successful to most successful, are: failing, at risk of failing, low performing, academic watch, successful, proficient, and advanced. *Id.* at 17. The High School was rated "successful" for the 2008-2009 school year and the 2010-2011 school year. *Id.* at 7. The High School dropped to "academic watch" for the 2011-2012 school year and remained at that level for the school years 2012-2013 and 2013-2014. *Id.* at 7–8. In contrast, the Elementary School improved in rating from "at risk of failing" for the 2009-2010 school year to "academic watch" for the 2010-2011 school year. Doc. #26-2 at ¶ 4. The Elementary School received a "successful" rating for the 2011-2012 school year and has remained at that level since. *Id.*

### B. Principals' Pay

When Stringer was hired as a principal, principals' salaries within the Mound Bayou School District were set by a scaled salary system, which based compensation on years of experience. Doc. #29-6 at 2 & n.5. Under this system, individuals with a doctorate degree started with a base salary of $70,000 and received that amount until their experience level justified a raise under the salary scale. Doc. #26-3 at 68; Doc. #29-6 at 2.

Because of her doctorate degree, Stringer was paid $70,000 from the time she was hired as principal of the High School until the fall of 2014, when a state-mandated bonus raised her salary to $71,500. Doc. #26-1 at 120–21.

---

[1] The spelling of this Board member's first name is reflected in the Board's minutes as "Evelina" although "Everlena" is used in Stringer's complaint.

Principal Vick's starting salary is not apparent from the record. However, at some point in 2012, Vick received a $5,000 raise. Doc. #29-5 at ¶ 12. As of 2014, Vick's salary was $66,000. Doc. #26-3 at 51.

### C. Title I Plan, Consultations, and Hiring Decisions

Each year, planning committees composed of members from the schools and local community develop Title I[2] School-Wide Plans for the Elementary School and the High School. Doc. #26-1 at 27–28. The purpose of a Title I Plan is to improve student academic achievement, and developing one is required in order to receive certain federal funding. *Id.*

In 2012, the planning committee for the High School prepared and submitted a Title I plan. Doc. #26-1 at 28–29; Doc. #29-2 at 1. As an element of the plan, Stringer requested that Shelton Wilder – a former principal and High School consultant as well as a former District Superintendent – be hired as a consultant to help the High School improve test scores. *Id.* at 28–29. The Board rejected the proposed Wilder hire, citing a decline in student performance while Wilder had been a consultant. Doc. #29-2 at 1. Stringer was offered the opportunity to recommend a different consultant but did not do so. Doc. #26-1 at 32.

In December of 2012, in response to a presentation Stringer made to the Board expressing her concern about test scores, Superintendent Crockett sent Professional Development Coordinator Linda Robinson and Dr. Kenyartic Brown to the High School to help raise test scores. Doc #26-2 at ¶ 7; Doc. #26-1 at 85. As part of the process, Robinson and Dr. Brown observed classrooms, spoke with teachers, and prepared a report, which Stringer characterized as "essentially … a write-up" for Superintendent Crockett. Doc. #26-1 at 85.

---

[2] Title I of the Elementary and Secondary Education Act allocates funds to disadvantaged schools "to ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education …." 20 U.S.C. § 6301.

Sometime before 2013, Stringer made several other hiring recommendations which the Board did not follow. *Id*. at 36–49. The recommendations included: (1) two STEM[3] teachers, the first of whom was rejected by the Board based on his English speaking skills and the second based on poor recommendations and poor performance while previously employed by the District; (2) a candidate for the position of band director; and (3) a candidate for an open janitor position. *Id*. at 37–38, 24–30; Doc. #26-2 at 1. Stringer also requested Beatrice Battle be rehired as a part-time assistant. Doc. #29-1 at 1.

### D. Stringer's Disability and Alleged Requests for Accommodation

Stringer suffers from glaucoma, which impairs her eyesight. Doc. #29-5 at ¶ 16. As a result, Stringer has difficulty reading administrative paperwork and proofreading documents. Doc. #29-1 at 104–05; Doc. #29-5 at ¶¶ 17–18.

On October 25, 2012, Stringer sent a letter to the Board explaining that she had made her previous request to rehire Beatrice Battle as an assistant because the services[4] Battle provided were "especially beneficial to [Stringer] because of [her] visual impairment." Doc. #29-1 at 3. Stringer's October 25 letter also voiced her opinion that Crockett was "continually holding my program back while at the same time allowing my male counterpart at the elementary school to proceed full speed ahead." Doc. #29-1 at 1.

The Board responded to Stringer by letter dated November 30, 2012, which stated:

---

[3] STEM stands for Science, Technology, Engineering, and Mathematics. Stringer later recommended another teacher for the STEM position whom the Board approved, but the candidate signed a contract elsewhere before Stringer could hire her. Doc. #26-1 at 38.

[4] In her letter, Stringer explained that the services:

> include, but are not limited to the following: proofreading for me; filing and organizing documents; preparing impressive bulletin boards; assisting with testing; assisting with registration; supervising students when teachers are absent or when they have to leave due to sudden emergencies; assisting students with class projects; preparing meeting places for open houses and other events; supervising student completion of career interest inventories and working hand-in-hand with the student services coordinator.

Doc. #29-1 at 2.

> The Board has not been made aware of any disability that you may suffer. The Board has consulted with Superintendent Crockett regarding this matter, and he has advised that he has not been provided with any documentation of an impairment suffered by you …. [T]he Board affirms its position of being an Equal Opportunity Employer, and it is the District's policy to make reasonable accommodations for the disabled …. Please schedule an appointment with Mr. Crockett no later than December 5, 2012, to discuss this matter in detail and to provide supporting documentation.

Doc. #29-2 at 2. The Board also told Stringer in the letter that it had reviewed and investigated her contentions of discrimination but had found no credible evidence supporting them. *Id.* at 1.

Stringer later sent Superintendent Crockett a one-page memorandum dated December 5, 2012. In the memorandum, Stringer stated that she was providing "documents as 'documentation of an impairment' that I am faced with," attaching a letter from the Mississippi Department of Rehabilitation Services ("MDRS") referring to her admittance to a rehabilitation center for the blind, and two pages from her MDRS Individualized Plan for Employment. Doc. #29-6 at 3; Doc. #29-3.

At some point before or during the early part of the 2013–2014 school year, Stringer requested that Shawneequa Beal, a lead teacher under Title I at the High School, be made assistant principal to help her with administrative paperwork that was difficult for Stringer to read. Doc. #26-1 at 103–04. The request included both expanded duties[5] for Beal and a pay supplement. *Id.* at 109. Stringer expressed concerns that Beal could not perform certain tasks in her current position because she was not permitted to do administrative work or see confidential records. *Id.* at 103–04. Stringer was convinced that titling Beal as an assistant principal was necessary to avoid improperly coding her in the personnel report for the Mississippi Department of Education. Doc. #26-3 at 66.

---

[5] During deposition, Stringer described tasks with which Beal could assist as an assistant principal, such as monitoring the building or observing classrooms. Doc. #26-1 at 104–05.

At an unspecified time, Beal was switched from being paid from federal funds under Title I to being paid from District funds, and her title was changed, which allowed Beal to take on a wider variety of tasks. *Id*. Beal was made an administrator for the 2013–2014 school year and, as a result, received a $2,000 pay supplement given to administrators. *Id*. at 69–70. Crockett told Stringer that Beal could help with any tasks Stringer assigned. *Id*. at 66.

### E. Stringer's Initial Charge of Discrimination

On February 15, 2013, Stringer filed a charge of discrimination against the Mound Bayou Public School District with the Equal Employment Opportunity Commission ("EEOC"). Doc. #29-4. In her charge, Stringer alleged she had been discriminated against based on her sex, disability, and in retaliation for opposing an unspecified unlawful employment practice. *Id*. Stringer specifically alleged that she had been denied a reasonable accommodation and raise in August 2012, and that the discrimination was ongoing.[6] *Id*.

On March 31, 2014, the EEOC issued Stringer a notice of right to sue, which stated that "the EEOC [was] unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." Doc. #1 at Ex. B.

### F. High School Events

At some point in spring 2013, Superintendent Crockett asked Stringer and her staff to change the greeting used to answer the phones at the High School. Crockett asked that the greeting be changed from, "You have reached John F. Kennedy, One of America's Best High

---

[6] The EEOC charge lists August 6, 2012, as the earliest date on which discrimination took place. Doc. #29-4.

Schools,"[7] to clarify that the recognition as a top school was "at the bronze level."  Doc. #29-5 at ¶ 2; Doc. #26-3 at 6–7.  Dr. Brown repeated these instructions to Stringer's staff during a phone call sometime later.  Doc. #26-1 at 67.

On May 26, 2013, graduation exercises took place at the High School.  Doc. #29-5 at ¶ 3. Prior to the graduation, Superintendent Crockett had the High School's national recognition banner taken down because it did not specify that the school was recognized at the bronze level as he had previously asked.  Doc. #26-3 at 61.  Shortly before the graduation ceremony began, Crockett told Wilder, who was attending the graduation as Stringer's guest and had been told to sit on the stage, that he should sit in the audience instead.  *Id*.; Doc. #26-1 at 117.  In his deposition, Superintendent Crockett explained that the stage was reserved for speakers and those connected with the school.  Doc. #26-3 at 63.

## G.  District-Wide Meeting

A district-wide employee meeting was held on August 8, 2013.  Doc. #29-5 at ¶ 10.  At the meeting, Superintendent Crockett pledged to pay bonuses of $100 to each member of the Elementary School staff.  *Id*.  Such bonuses were later awarded to the Elementary School staff; members of the High School staff were not offered bonuses.  *Id*.

According to Stringer, Crockett singled her out at the meeting for filing an EEOC complaint.  Doc. #29-5 at ¶ 7.  Stringer claims that Crockett told the employees in the meeting's audience that an EEOC investigation might be forthcoming and instructed them if questioned to answer questions "yes" or "no" and avoid going into great detail.  *Id.* at ¶ 9.

---

[7] Crockett testified the greeting was "You have reached John F. Kennedy, one of America's top high schools."  Doc. #26-3 at 57.

## H. Stringer's Nonrenewal

The minutes of the Board's meeting on February 19, 2014, indicate that the Board voted on and approved a recommendation not to renew Stringer's contract as an administrator for the 2014-2015 school year.[8]  Doc. #29-8 at 5.  On February 27, 2014, Stringer received a letter from Superintendent Crockett informing her that her contract would not be renewed for the 2014-2015 school year because her license to serve as an administrator was scheduled to expire on June 30, 2014.  Doc. #29-7.

On July 1, 2014, the Mound Bayou Public School District was consolidated with at least one other school district, which created a new five-school district – North Bolivar Consolidated School District.[9]  Doc. #26-3 at 2; Doc. #26-2 at ¶ 8.

On July 19, 2014, after the renewal of her license to serve as an administrator, Stringer received a contract for the 2014-2015 school year.  Doc. #26-1 at 157, 177.  Despite receiving the 2014-2015 contract, Stringer resigned on an unknown date, ending her tenure as principal of the High School on, according to Stringer, either December 15 or 19, 2014.[10]  *Id.* at 60, 176.

## III
## Procedural History

On June 25, 2014, about three weeks before she received the contract for the 2014-2015 school year, Stringer commenced this action by filing her initial complaint, alleging violations of her rights under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities

---

[8] However, Superintendent Crockett's declaration states that he "made the non-renewal decision" and "the non-renewal decision never went before the School Board because Plaintiff did not request a hearing on the non-renewal decision."  Doc. #26-2 at ¶ 6.

[9] In addition to the Elementary School and the High School, the other schools in the North Bolivar Consolidated School District are Shelby Middle School, Broad Street High School, and Brooks Elementary School.  Doc. #26-1 at 60.

[10] Although claiming she was "coerced into involuntarily resigning" during deposition, Stringer has not made any claims or arguments incorporating her cessation as High School principal into this case.  Doc. #26-2 at 176.

Act of 1990, and tortious interference with her business relations.  Doc. #1.  On January 8, 2015, after Defendants answered the complaint, Doc. #4, Stringer filed a motion for leave to amend her complaint, Doc. #15.  Upon being granted leave to amend by United States Magistrate Judge Jane M. Virden, Stringer filed an amended complaint on January 12, 2015.  Doc. #16.

In her amended complaint, Stringer claims that:  (1) various Defendants "discriminated against [her] in the terms and conditions of her employment on the basis of her gender" by harassing her, treating her differently, and paying her unequally;[11] (2) various Defendants "violated the ADA by issuing non-renewal and termination notices to Plaintiff in response to her disability and failing to reasonably accommodate her;" (3) various Defendants "violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., and the ADA by retaliating against Plaintiff for filing a charge of discrimination with the EEOC;"[12] and (4) "individual Defendants' actions constitute tortious interference with contractual and/or business relation in violation of the laws of the State of Mississippi."  Doc. #16 at ¶¶ 37, 43, 47, 51.  Defendants answered the amended complaint on February 2, 2015.  Doc. #18.

On May 28, 2015, Defendants moved for summary judgment.  Doc. #25.  Stringer responded in opposition on June 15, 2015.  Doc. #29; Doc. #30.  Defendants did not reply to Stringer's response.

---

[11] Stringer identifies as gender discrimination the refusal to implement her Title I Plan, refusal to honor her staffing recommendations, and having the federal programs director and the curriculum coordinator come to the High School.  Doc. #16 at ¶¶ 22–23, 25–26.  She additionally claims that Crockett's sex-based discrimination included "harassing telephone calls, micro management and escalating of the hostile work environment by using certain members of his central office staff to carry out his acts of sexual harassment."  *Id.* at ¶ 24.  Stringer claims that the Board joined in the discrimination and harassment sometime after fall 2011.  *Id.* at ¶ 25.

[12] As acts of retaliation committed by Crockett and the Board, Stringer identifies (1) Crockett's instructions to change the phone greetings at the High School, (2) the changes made at the graduation ceremony, (3) being singled out by Crockett at the August 8, 2013, (4) Crockett "obstruct[ing] the EEOC investigation" by instructing employees "to give only 'yes' and 'no' answers and to not go into any great detail if they were questioned;" and (5) bonuses being awarded to the staff of the Elementary School (but not the High School).  Doc. #16 at ¶¶ 27–31.

Since filing her initial charge of discrimination, Stringer has filed at least three additional EEOC charges, which led to her filing an additional four separate actions in this federal court district.[13]

**IV**

**Analysis**

In her amended complaint, Stringer alleges discrimination based on her sex, discrimination based on her disability, retaliation for engaging in activities protected by the Americans with Disabilities Act and Title VII, and tortious interference with contract and business relations. Doc. #16. Defendants' motion for summary judgment broadly asks for summary judgment on all claims but, as discussed below, fails to address certain of Stringer's claims.

**A. Americans with Disabilities Act Claims**

Stringer asserts two types of disability discrimination claims under the Americans with Disabilities Act of 1990: (1) failure to provide a reasonable accommodation; and (2) discrimination in employment decisions regarding her. Doc. #16 at ¶ 43. In their motion for summary judgment, Defendants argue that Stringer's reasonable accommodation claim must fail because Stringer never requested a reasonable accommodation and because a reasonable accommodation was actually provided. Doc. #26 at 14–15. Defendants further argue that Stringer's discrimination claim must fail because there was no adverse employment decision based on her disability. *Id.* at 17–18.

---

[13] The first additional EEOC charge, signed March 10, 2014, is the basis for civil case number 4:15-cv-00109. The second, signed October 29, 2014, gave rise to civil case number 4:15-cv-00108. The third, signed March 5, 2015, led to both civil case number 4:15-cv-00107 and civil case number 4:15-cv-00110. On motion of the defendants, these four cases were consolidated into action number 4:15-cv-00107 on November 20, 2015. *See Stringer v. North Bolivar Consolidated Sch. Dist.*, No. 4:15-cv-00107 (N.D. Miss. Nov. 20, 2015) (Doc. #17).

## 1. Reasonable Accommodation

The Americans with Disabilities Act "prohibits covered employers from 'discriminat[ing] against a qualified individual on the basis of disability.' 42 U.S.C. § 12112(a). Discrimination includes failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability … unless such covered entity can demonstrate that the accommodation would impose an undue hardship.' *Id.* § 12112(b)(5)(A)." *Feist v. Louisiana, Dept. of Justice*, 730 F.3d 450, 452 (5th Cir. 2013).

When an employee's disability, limitations, and required reasonable accommodations "are not open, obvious and apparent to the employer, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (internal punctuation omitted). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing 29 C.F.R. § 1630.9). "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor v. Principal Fin. Grp.*, Inc., 93 F.3d 155, 165 (5th Cir. 1996).

If requested, the accommodation the employer provides does not need to be the employee's preferred accommodation or best possible accommodation; it need only be "'sufficient to meet the job related needs of the individual being accommodated.'" *Agro Distrib.*, 555 F.3d at 471 (quoting 29 C.F.R. § 1630.9). *Accord*, *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing

employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

In her amended complaint, Stringer alleges she requested an accommodation but that over the "past few years [Crockett] has refused to offer [Stringer] accommodations such as a reader for her visual disability." Doc. #16 at ¶ 32. Stringer also alleges that her requests to have Shawneequa Beal made the assistant principal for the High School to assist her were denied. *Id.* Further, in her summary judgment response, Stringer claims Defendants failed to provide her a reasonable accommodation when they refused to rehire Battle as her assistant. Doc. #30 at 1, 6.

### a. Refusal to Hire Beal

Without citing legal authority or any record evidence, Stringer appears to argue that the failure to make Beal an assistant principal was an effective denial of a reasonable accommodation because Beal could not fully assist Stringer without the requested promotion. Doc. #30 at 6. In this regard, Stringer testified that Beal, in her position then, could not work as an administrator or see certain confidential records which Stringer needed assistance reading. Doc. #26-1 at 103–04. Stringer also listed other tasks Beal could perform as an assistant principal to assist her, such as monitoring the building or observing classrooms. *Id.* at 104–05.

Defendants argue that making Beal assistant principal was not a reasonable request because it would have required promoting an employee to perform essential functions of Stringer's job. Doc. #26 at 14. They contend that Stringer's insistence on having an assistant principal was actually based on time constraints, not difficulties in reading caused by her glaucoma. *Id.* As support for these arguments, Defendants point to Stringer's deposition in which she explained that, as an assistant principal, Beal could have helped with disciplinary issues (which Stringer testified took up a disproportionate amount of her time) and managed

administrative matters at the High School when Stringer left campus for personal development reasons. *Id*. Defendants also argue that, despite Stringer's request not being reasonable, they did in fact provide her with a reasonable accommodation when they changed Beal's position title to administrator and changed how Beal was paid. *Id*. at 14–15. According to Defendants, nothing more was required on their part. *Id*. at 15. Stringer responds that Defendants did not make Beal an assistant principal as requested and that "placing Ms. Beal as an assistant principal was needed so Ms. Beal could help with administrative paperwork that was difficult for Plaintiff to read." Doc. #30 at 6.

"The ADA requires employers to make '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position ....'" *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). Employers need not provide an employee's preferred accommodation and are only required to accommodate those disability based limitations which are known to them. *Taylor*, 93 F.3d at 164–65.

The record shows that Defendants made substantial efforts to address Stringer's reading limitations and concerns. In response to Stringer's request that Beal be made assistant principal as her accommodation, Crockett met with Stringer, changed Beal's title[14] to administrator, began to pay Beal from district rather than federal funds in order to remove the restrictions on the duties Beal could perform, and told Stringer that Beal could help with any tasks assigned.[15] Doc.

---

[14] In his deposition, Superintendent Crockett explained, "Ms. Beal was [previously] assigned as lead teacher under Title I. We changed that particular title in order to free her up to do whatever Dr. Stringer assigned her ...." Doc. #26-3 at 66.

[15] Notwithstanding Stringer's conclusory assertion to the contrary, there is nothing in the record which suggests that the failure to promote Beal to assistant principal in any way limited the duties she could perform.

#26-3 at 66, 69–70. Additionally, as requested by Stringer, Beal began to receive the $2,000 pay supplement given to administrators. *Id*. at 69–70. Thus, Defendants complied with Stringer's requests related to her disability concerning Beal. Given this, nothing more was required of Defendants. *See, e.g., St. Cyr v. Napolitano,* No. EP-10-CV-208-KC, 2011 WL 4964104, at *16–17 (W.D. Tex. Oct. 18, 2011) (where defendants provided plaintiff accommodation necessary to do her job, more was not required). Having reached this conclusion based on the circumstances described, the Court declines to address whether Stringer's request was reasonable.

### b. *Refusal to Rehire Beatrice Battle*

In her amended complaint, Stringer claims that over "the past few years, Mr. Crockett has refused to offer Plaintiff accommodations such as a reader for her visual disability." Doc. #16 at ¶ 32. In her summary judgment response, Stringer claims that she made a request for reasonable accommodation in asking that Beatrice Battle be rehired, and that the request was denied. Doc. #30 at 6.

As stated above, employers are only required to accommodate those disability-based limitations which are known to them. *Taylor*, 93 F.3d at 165. In order to accommodate an employee, an "employer must know of both the disability and the employee's desire for accommodations …." *Wilson v. City of Itta Bena*, No. 4:98-CV-170-D-B, 1999 WL 1426192, at *2 (N.D. Miss. Sept. 14, 1999). Therefore, "it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." *Taylor*, 93 F.3d at 165.

The record indicates that Stringer requested Battle be rehired before she informed Defendants of her disability. *See* Doc. #29-1 at 3. Stringer has not identified anything to suggest

that she made the initial request after Defendants were aware of her disability. As such, Stringer did not make a reasonable accommodation request regarding Battle. *See Taylor*, 93 F.3d at 165 (where disability and limitations not included in request, request was not formal request for accommodation under ADA).

Finally, to the extent Stringer's October 2012 letter referencing her disability may be construed as a separate request for accommodation to hire Battle, the Court concludes that such a request was accommodated when, following the letter, Crockett reassigned Beal to perform any duties Stringer desired.

### 2. Disability Discrimination in Employment

"The ADA prohibits an employer from discriminating against a 'qualified individual with a disability on the basis of that disability.'" *LHC Grp., Inc.*, 773 F.3d at 694 (quoting 42 U.S.C. § 12112(a)). In bringing a discrimination claim under the ADA, "the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp[oration] v. Green*, 411 U.S. 792 (1973), …." *Id.* Where, as here, a plaintiff relies on circumstantial evidence, the *McDonnell Douglas* inquiry first requires that the plaintiff make a prima facie showing of discrimination. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015). In order to "establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *LHC Grp., Inc.*, 773 F.3d at 697. In this case, neither Stringer's disability nor her qualifications are in dispute. Rather, the parties disagree on whether Stringer suffered an adverse employment decision because of her disability.

In her amended complaint, Stringer claims she received nonrenewal and termination notices[16] because of her disability. Doc. #16 at ¶ 43. With regard to the nonrenewal notices, Defendants argue that, although Stringer received a letter of nonrenewal, her contract was renewed after she obtained certification, as was the case for all employees initially rescinded but who later obtained certification by the start of the school year. Doc. #26 at 7 n.4. Stringer does not address how the rescinded notice of nonrenewal qualifies as an adverse action. Doc. #30 at 6.

In the context of disability discrimination claims, "the Fifth Circuit has limited adverse employment actions to acts which affect compensation, duties and benefits." *Smith v. Potter*, 629 F.Supp.2d 644, 651 (S.D. Miss. 2009). Actions which may otherwise be adverse employment decisions do not satisfy the third element of the prima facie test if they are later rescinded without harm to plaintiff. *See Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 590 (S.D. Tex. 2015) ("Because the August 2012 decision to terminate [Plaintiff] was rescinded with no loss of pay, it is not an adverse employment action").[17]

Stringer's contract was ultimately renewed for the 2014-2015 school year and she received the new contract on July 19, 2014, before that school year began. Doc. #26-1 at 157, 177. The record does not indicate any loss of pay, seniority, or position as a result of the earlier nonrenewal. That Stringer was still given her contract for the 2014-2015 school year without any other harm precludes the nonrenewal notices from satisfying the third element of a prima

---

[16] Stringer testified that there were at least two notices of nonrenewal related to the 2014–2015 school year. Doc. #26-1 at 156–57. In their motion for summary judgment, Defendants mention only one notice of nonrenewal. Doc. #26 at 7 n.4. The record reflects only one nonrenewal notice. Doc. #29-7.

[17] While *Brooks* interpreted adversity under Title VII, "courts that have addressed claims brought under the [ADA] have looked to Title VII … to provide guidance as to the elements that constitute a *prima facie* case of disability discrimination." *Munoz v. H & M Wholesale, Inc.*, 926 F. Supp. 596, 604 (S.D. Tex. 1996); *see generally Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 234 (5th Cir. 2001) ("Not only are Title VII and the ADA similar in their language, they are also alike in their purposes and remedial structures.").

facie case of disability discrimination.  Because Stringer cannot establish a prima facie case in this regard, summary judgment will be granted on her claims of disability discrimination.

## B.  Title VII Claims

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's … sex."  42 U.S.C. § 2000e-2(a)(1).  Stringer asserts that Defendants violated Title VII by:  (1) engaging in harassment based on her sex; (2) making compensation decisions based on her sex; and (3) making other employment decisions based on her sex.

### 1.  Harassment Based on Sex

A "plaintiff may establish a Title VII violation by proving that sex discrimination has created a hostile or abusive working environment."  *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).  To state a claim for relief under Title VII for gender discrimination based on a theory of hostile work environment, a plaintiff must prove:

> (1) that she belongs to a protected class, (2) that she was subject to unwelcome harassment, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action.

*Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996).  Where the alleged harasser is the plaintiff's immediate or successively higher supervisor, the plaintiff need only prove the first four prongs.  *Woods*, 274 F.3d at 298 n.2.

Stringer alleges that Superintendent Crockett, her immediate supervisor, and his subordinates,[18] micromanaged her work and placed "harassing telephone phone calls." Doc. #16 at ¶ 24. During deposition, Stringer identified as the harassing calls the phone conversations about changing the phone greeting and another phone call canceling at the last minute a trip of the High School's chapter of the Future Business Leaders of America. Doc. # 26-1 at 66–67, 71–73.

Defendants argue that Stringer cannot prove that a hostile or abusive environment existed because she cannot establish elements three or four of her cause of action. Doc. #26 at 20. Specifically, they argue that the actions were sex-neutral and that they did not alter workplace conditions or create an abusive atmosphere. *Id.* at 20–22. Stringer's summary judgment response does not address these arguments. Doc. #30 at 7.

Because Title VII only prohibits harassment based on a protected characteristic, "[s]ex-neutral hostile conduct cannot be used to support a hostile environment claim. Title VII does not protect employees from hostile conduct that is not based on their protected status." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)). In order for such a claim to survive summary judgment, "[t]he record must demonstrate that the abuse was motivated by the plaintiff's gender rather than by a personal dislike, grudge, or workplace dispute unrelated to gender." *Duhon v. Napolitano*, No. 1:11-CV-334-HSO-RHW, 2013 WL 704894, at *5 (S.D. Miss. Feb. 26, 2013) (quoting *Barnett v. Tree House Café, Inc.*, No. 5:05–CV–195–DCB–JMR, 2006 WL 3545025, at *12 (S.D. Miss. Dec. 8, 2006)).

---

[18] While Stringer does not specifically identify in her complaint the allegedly harassing staff members or the actions they took, she included the phone call from Dr. Brown in her deposition discussion of harassing phone calls. Doc. #26-1 at 66–67.

Nothing in the record suggests that the phone calls and micromanagement Stringer experienced were motivated by her sex. Beyond Stringer's complaint, there is no mention of a sex-based motive for any of the actions alleged. As such, Stringer is unable to establish the third element of her prima facie case. Because Stringer cannot establish a prima facie case for harassment based on sex, summary judgment will be granted on her claims of sex-based harassment.[19]

## 2. Compensation Discrimination

Stringer raises three claims of unequal pay in her amended complaint. Doc. #16 at ¶¶ 33–34. First, Stringer alleges that, based on her sex, she received a lower salary for her duties as a High School principal with a doctorate degree. *Id.* at ¶ 34. Second, Stringer claims that, despite having less experience, Principal Vick received a pay raise of $5,000 in 2012 while she did not. *Id.* Third, Stringer claims she was promised a pay raise of $2,000 in 2013 but was never given the raise. *Id.*

### a. Salary Discrimination

A plaintiff "claiming disparate treatment in pay under Title VII must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). The job contents, rather than "the job title classification or description, determine whether the circumstances are nearly

---

[19] Even if Stringer could establish sex-based harassment, her claim would still fail because the complained-of harassment falls well short of the legal standard for establishing that the harassment affected a term or condition of employment. "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008) (internal punctuation omitted). The Fifth Circuit has set a "fairly high standard for severe or pervasive conduct." *Flowers*, 247 F.3d at 236. Needless to say, periodic phone calls about changing a telephone greeting fall well short of this standard. *See Brown v. Liberty Mut. Grp., Inc.*, 616 F. App'x 654, 657 (5th Cir. 2015) (where plaintiff complained of comments and threats related to employment, noting "[t]he types of job-related criticisms … complain[ed] of are unlikely to support a hostile work environment claim.").

identical." *Goring v. Bd. of Sup'rs of La. State Univ.*, 932 F. Supp. 2d 642, 651 (M.D. La. 2010) (citing *Montgomery v. Clayton Homes, Inc.*, 65 F. App'x 508, at *2 (5th Cir. 2003)). The analysis of similar circumstances may be applied "where the two employees whose salaries are being compared are employed at different times in the same position." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984) (citing *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981)).

In their motion for summary judgment, Defendants argue that Stringer must show she made less money than Principal Vick in order to establish a prima facie claim of unequal pay. Doc. #26 at 27. Defendants further argue that because Stringer made more than Principal Vick, she cannot establish a prima facie claim. *Id*. In her response,[20] Stringer argues that while she made more than Principal Vick, she would have had a higher salary if she had been treated the same as male employees. Doc. #30 at 7.

Here, the record reveals that Stringer's salary as a principal never dropped below $70,000. In contrast, Vick's salary as principal never exceeded $66,000. Thus, at no point did Principal Vick make more than Stringer. Stringer has identified no other potential comparator. Consequently, Stringer cannot show that she was paid less than a man whose responsibilities were substantially the same as hers. As such, Stringer cannot establish a prima facie case of discrimination in compensation based on her salary and thus, cannot evade summary judgment on her salary-based claim of unequal compensation.

*b. Discrimination in Awarding Raises*

Stringer alleges she was denied two raises: first, at some point in 2012, and second, for the 2013-2014 school year. Doc. #16 at ¶ 34. In order to make a prima facie showing of

_____

[20] Stringer titles this section of her response "Sex Discrimination and Equal Pay Act." Doc. #30 at 7. Stringer did not include any allegations concerning the Equal Pay Act in her amended complaint though, and she did not include any arguments concerning the Equal Pay Act in her response. Docs. #16 & #30.

discrimination with regard to receiving a raise, a plaintiff must "show that similarly situated employees who were [not members of her protected class] received raises during the same period." *Vital v. Nat'l Oilwell Varco*, No. CIV.A. H-12-1357, 2014 WL 4983485, at *20 (S.D. Tex. Sept. 30, 2014) (citing *Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816 (5th Cir. 2007)). Defendants' argument for summary judgment on Stringer's pay discrimination claims is three sentences long. Doc. #26 at 27. The only evidence in the record Defendants identify in seeking summary judgment is the relative salaries of Stringer and Vick. *Id*. Defendants have not referenced any part of the record indicating the absence of a genuine issue of material fact with regard to Stringer's pay raise claims. Thus, Defendants have not met their initial summary judgment burden. Summary judgment then will be denied on Stringer's two claims regarding pay raises. *Latimer v. Smithkline & French Labs., a Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir. 1990) (citing *Celotex Corp.*, 477 U.S. 317) (moving party "has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact").

### 3. Sex Discrimination in Employment Decisions

The burden shifting framework in *McDonnell Douglas* applies to sex discrimination cases under Title VII. *Grimes v. Wal-Mart Stores Texas, L.L.C.*, 505 F. App'x 376, 379 (5th Cir. 2013). Under this framework, a plaintiff must first make a prima facie case for sex discrimination by showing

> (1) that she belongs to a protected class, (2) that she was qualified for the position, (3) that she suffered an adverse employment action, and (4) that she was replaced with a similarly qualified person who was not a member of the protected class or that similarly situated employees were treated more favorably.

*Id.* "For purposes of a Title VII discrimination claim, 'adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or

compensating.'"  *McCullough v. Houston Cty. Tex.*, 297 F. App'x 282, 287 (5th Cir. 2008) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)).  Establishing disparate treatment requires establishing that other employees were treated differently under "nearly identical" circumstances.  *Mayberry*, 55 F.3d at 1090.  If a plaintiff succeeds in making a prima facie case, "it becomes the employer's burden to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff.  Once the employer puts forth a nondiscriminatory reason, the plaintiff must show that the employer's proffered reason is merely pretext for discrimination." *Grimes*, 505 F. App'x at 379. (internal citations omitted).

In her amended complaint, Stringer identifies as discriminatory acts: (1) Crockett's refusal to institute her school-wide plan; (2) Crockett's decision not to adopt her hiring recommendations, and (3) the visits to the High School by Linda Robinson and Dr. Kenyartic Brown.  Doc. #16 at ¶¶ 23, 25.  Defendants argue that Stringer has failed to state a prima facie case of gender discrimination and, alternatively, that she cannot establish pretext.  Doc. #26 at 20, 25–26.  With regard to Stringer's prima facie case, Defendants first argue that Stringer has not suffered an adverse employment action.  *Id.* at 20.  Defendants additionally argue that there is no factual basis for Stringer's claim that Principal Vick was better treated, and that Stringer has offered no evidence of how Vick was treated differently in the circumstances she alleges. Doc. #26 at 25–26.  Stringer's summary judgment response does not address Defendants' arguments.[21]  Doc. #30 at 7.

The acts of discrimination Stringer alleges in her amended complaint described above are not related to hiring, granting leave, discharging, promoting, or compensating.  As a result, Stringer cannot establish that she suffered an adverse employment action.  Because this

---

[21] In the conclusion of her brief, Stringer asserts that she "has presented circumstantial evidence of pretext to satisfy his [sic] burden to defeat the Defendant's Summary Judgment Motion."  Doc. #30 at 8.  This use of the word pretext is all the Court could find approaching a discussion of Defendants' arguments.

deficiency leaves Stringer unable to establish a prima facie case for discrimination based on sex, summary judgment will be granted on that claim.

## C. Retaliation

Title VII prohibits discrimination against an employee on the grounds that "he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The ADA similarly provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203.  The Fifth Circuit "applies the same analysis to ADA and Title VII retaliation claims."  *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008).  Such claims undergo the burden shifting framework found in *McDonnell Douglas*.  *McCoy*, 492 F.3d at 556. In order to make a prima facie case, a plaintiff must show:

> (1) he participated in an activity protected by Title VII [or the ADA]; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.

*Id*. at 557.  With regard to the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

Stringer claims Defendants violated both Title VII and the ADA by retaliating against her for filing a charge of discrimination with the EEOC.[22] Doc. #16 at ¶ 47. Specifically, she claims that, as a result of having filed her February 15, 2013, EEOC charge, Defendants retaliated against her by: (1) disrupting her graduation exercises; (2) "singling" her out in a district-wide meeting; (3) Crockett's "instructing employees to not fully comply with the EEOC's investigation"; (4) denying the High School staff a cash bonus; (5) forcing Stringer to change the phone greeting at the High School; and (6) issuing her nonrenewal notices. Doc. #30 at 7.

Defendants' motion for summary judgment addresses "Plaintiff's claim that she was retaliated against for requesting an accommodation" as a subsection of their discussion of Stringer's discrimination claims under the ADA. Doc. #26 at 17–19. But at no point do Defendants address Stringer's Title VII retaliation claim. Summary judgment on Stringer's claim of retaliation under Title VII therefore will be denied. *See Wood v. Gateway, Inc.*, No. 5:03-cv-007, 2003 WL 23109832, at *8 (N.D. Tex. Dec. 12, 2003) ("Further, the Court finds that Gateway failed to address the interference claim in its motion for summary judgment; thus, summary judgment must be denied as to Wood's claim that Gateway violated his substantive prescriptive rights under the FMLA."); *see also Sam v. Braetex, Inc.*, No. CIV.A.3:96-CV-1366-P, 1997 WL 222919, at *1 (N.D. Tex. Apr. 24, 1997) ("[T]he Court granted Defendant's motion for summary judgment as to Plaintiff's claims, if any, for discriminatory termination but denied summary judgment on her cause of action for discriminatory denial of transfers because Defendant's motion failed to address this claim.").

---

[22] Stringer's amended complaint asserts only one "count" of retaliation, which she titles "Violations of Title VII – Retaliation." Doc. #16. However, the count alleges that Defendants "violated Title VII … and the ADA by retaliating against Plaintiff for filing a charge of discrimination with the EEOC." *Id.* at ¶ 47. This is sufficient to state a claim under both statutes. *See Nystedt v. Nigro*, 700 F.3d 25, 29 (1st Cir. 2012) (single count in complaint may contain multiple claims and implicate multiple defendants).

As for the ADA retaliation claim, there is no dispute that Stringer engaged in a protected activity by filing her EEOC charge. However, Defendants seek summary judgment on the argument that the actions Stringer alleges are not the sort courts have determined would dissuade an employee from filing a charge of discrimination. Doc. #26 at 17–18. Defendants also argue that Stringer cannot show a causal link between her protected activity and the alleged adverse employment actions. *Id*. at 16.

### a. Graduation Exercises

The first instance of retaliation Stringer identifies in her response is her allegation that Crockett sought to "sabotage[e]" the 2013 graduation exercises. Doc. #30 at 7. In this regard, the record reveals that Crockett directed the removal of a banner and interfered with the seating of a guest. Doc. #26-3 at 61, 63.

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N.*, 548 U.S. at 67. This standard does not encompass "those petty slights or minor annoyances that often take place at work …." *Id*. at 68.

Even viewing the facts in the light most favorable to Stringer, the Court cannot conclude that the removal of a banner or the moving of a guest are anything more than petty slights or minor annoyances. *See, e.g., Garza v. Laredo Indep. Sch. Dist.*, 309 F. App'x 806, 811 (5th Cir. 2009) (attempted cancellation of festival where plaintiff was master of ceremonies and suspending some of his programs not adverse for purposes of retaliation). Accordingly, such acts may not form the bases of a retaliation claim.

Regarding causation, a plaintiff must "produce *some* evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of

retaliation." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (emphasis in original) (citing *Long,* 88 F.3d at 305 n.4). While the time lapse between the two events is a factor, "[t]emporal proximity between protected activity and an adverse employment action, by itself, does not constitute sufficient evidence to satisfy the prima facie burden unless that proximity is 'very close.'" *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). To this end, the Fifth Circuit has held that, standing alone, a temporal proximity of three and a half months or more is insufficient to establish causation. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807–08 (5th Cir. 2007); *see also Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011) (four-month gap insufficient to establish prima facie evidence of causation).

Here, the graduation ceremony took place three and a half months after Stringer filed her EEOC complaint. Thus, even if the Court found the matters about which Stringer complains to be more than petty slights or annoyances, Stringer cannot depend on temporal proximity to establish a causal link between her complaint and the graduation events. Accordingly, Stringer is unable to establish a prima facie case of retaliation based on the events at graduation.

### b. *Being Singled Out*

The second instance of retaliation Stringer identifies in her response is her claim that she was singled out at the district-wide meeting[23] in August 2013. Doc. #30 at 7. Being singled out at a meeting is not, however, an adverse employment decision. *See King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("Even taken in a light most favorable to [plaintiff], allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do

---

[23] Stringer's response says "meetings." Doc. #30 at 7. However, the only evidence of "singling out" relates to the August 8, 2013, meeting. *See* Doc. #29-5 at ¶¶ 7–9.

not constitute actionable adverse employment actions as discrimination or retaliation"). Even if the act could be deemed adverse, there is no evidence of causation apart from a seven-month gap between Stringer's protected activity and the staff meeting. This gap is insufficient to create a genuine issue of material fact as to causation. *See, e.g., Strong*, 482 F.3d at 808. Stringer cannot therefore establish a prima facie case of discrimination based on being singled out at the meeting.

### c.  Obstruction of EEOC Investigation

In her response to summary judgment, Stringer argues that Defendants retaliated against her when Crockett "instruct[ed] employees to not fully comply with the EEOC's investigation." Doc. #30 at 7. In her affidavit, Stringer avers that Crockett, at the August 2013 district meeting, announced "that an EEOC investigation might be forthcoming and direct[ed the staff] to give only 'yes' and 'no' answers and to not go into any great detail if they were questioned." Doc. #29-5 at ¶ 9.

First, there is no question Stringer engaged in protected activity under the ADA and Title VII when she filed her charge of discrimination with the EEOC. *See Breeden*, 532 U.S. at 273 (filing EEOC complaint is protected activity; receiving right to sue letter is not); *Nelson v. Lake Charles Stevedores*, *L.L.C.*, No. 2:11-CV-1377, 2014 WL 1339827, at *10 (W.D. La. Apr. 2, 2014) (filing complaint with EEOC was protected activity).

Second, "[i]f a supervisor interferes with an EEOC investigation by intimidating witnesses … that employer has engaged in conduct that … would dissuade a reasonable worker, including the 'charging party,' from making or supporting a charge of discrimination." *Ankeny v. Napolitano*, No. C09-1379, 2010 WL 5094687, at *4 (W.D. Wash. Dec. 7, 2010). Viewed in the light most favorable to Stringer, the Court concludes that a statement from a supervisor

directing all employees to be as vague as possible is akin to intimidating witnesses and, therefore, amounts to an adverse action under the retaliatory framework.[24]

Third, "[t]he 'causal link' element of the prima facie case is satisfied when the plaintiff shows that the employment decision and his protected activity 'were not wholly unrelated.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). In their briefs, the parties have focused their arguments about causal connection on the time lapse between the protected activity and the acts of retaliation. However, in her response to summary judgment, Stringer directs this Court to her affidavit describing Crockett's conduct. Doc. #30 at 2–3. Stringer's affidavit states that at the August 2013 meeting, she was identified as having filed the EEOC complaint. Doc. #29-5 at ¶ 7. The affidavit further states that, at the same meeting, Crockett issued his allegedly retaliatory declaration regarding compliance with an EEOC investigation. *Id*. at ¶ 9.

There can be no doubt that the adverse action (a directive regarding an EEOC investigation) was not wholly unrelated to Stringer's protected activity of filing an EEOC charge. Therefore, the causation element of Stringer's prima facie case has been met. Accordingly, the Court concludes there is a genuine issue of material fact as to whether Stringer has met her prima

---

[24] In reaching this conclusion, the Court acknowledges that Stringer engaged in protected activity following the August meeting, and that unpublished Fifth Circuit authority suggests subsequent protected activity may weigh against a finding of adversity under *Burlington*. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007). A district court in Kansas which has considered this authority has declined to find subsequent activity dispositive on the issue of adverse action, accurately observing:

> [E]very plaintiff asserting a claim of retaliation has, by virtue of Title VII's exhaustion requirements, necessarily filed a charge of discrimination concerning the allegedly retaliatory act. To suggest, then, that a plaintiff's filing of a charge of discrimination precludes a finding that a reasonable person might be dissuaded from filing a charge of discrimination defies logic.

*Turrentine v. United Parcel Ser., Inc.*, 645 F.Supp.2d 976, 990 (D. Kan. 2009). Here, as in the Tenth Circuit, the filing of an employment discrimination lawsuit is a protected activity. *See Cephus v. Tex. Health and Human Servs. Comm'n*, __ F.Supp.3d __, No. H-14-696, 2015 WL 7313414, at *8 (S.D. Tex. Nov. 19, 2015) ("Filing of a lawsuit by the employee against the employer also can constitute a 'protected activity' under Title VII.") (citing *Everett*, 444 F. App'x at 41). Like the court in *Turrentine*, this Court declines to adopt a rule which would virtually eviscerate the retaliation protections of employment statutes.

facie case of retaliation regarding Crockett's comments at the August meeting. Thus, the burden shifts to Defendants to offer a legitimate nonretaliatory reason for Crockett's actions. Defendants, however, have offered no reason for Crockett's statement. Therefore, summary judgment is inappropriate on Stringer's retaliation claims insofar as they are based on Crockett's statements regarding a pending EEOC investigation.

### d. Bonuses for Elementary School Staff

As the fourth act of retaliation, Stringer identifies the grant of bonuses to the Elementary School employees, "while singling out Stringer's staff" in August 2013. Stringer again has provided no evidence of a causal connection, except that the bonuses were distributed after she had filed her complaint. The bonuses were distributed almost seven months after Stringer's complaint was filed. The two events, therefore, are not close enough in temporal proximity to establish a prima facie case of retaliation based on the granting of bonuses.

### e. Changing Phone Greeting

Stringer alleges she and her staff were instructed to change the phone greeting as an act of retaliation. However, this Court concludes that being instructed to change a phone greeting falls squarely within the category of petty slights and minor annoyances that are not actionable under relevant jurisprudence. *See, e.g., King*, 294 F. App'x at 85 (work requests, even improper ones, "do not constitute actionable adverse employment actions as discrimination or retaliation"). Accordingly, Stringer cannot establish a prima facie case of retaliation based on the interference with the phone greeting.

*f. Nonrenewal of Stringer's Contract*

In her response to the summary judgment motion, Stringer identifies the initial nonrenewal of her contract as a sixth act of retaliation. Doc. #30 at 7. Such claim must fail because it is not before the Court.

"A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). "Even though heightened pleading is not required in discrimination cases, the complaint must still 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir. 2008) (quoting *Swiekwicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

In her amended complaint, the only allegation related to nonrenewal is Stringer's assertion that Defendants "have violated the ADA by issuing non-renewal and termination notices to Plaintiff in response to her disability and failing to reasonably accommodate her." Doc. #16 at ¶ 43. At no point does the amended complaint allege that the nonrenewal was made in retaliation for Stringer's Title VII or ADA activity. Under these circumstances, the Court concludes that, with regard to the retaliation claim based on the nonrenewal of Stringer's contract, Stringer did not provide Defendants with fair notice of the claim or the grounds upon which it was based in her amended complaint. Accordingly, the claim is not properly before this Court.[25] *See Cutrera*, 429 F.3d at 113.

---

[25] However, in addition to the Fifth Circuit's line of cases holding that an argument made in response to summary judgment, but not in the complaint, is not properly before the court, the Fifth Circuit has also held that where "a claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)." *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010). This Court, therefore, will consider the claim of retaliation based on nonrenewal as a motion for leave to file an amended complaint. *Id.*

### g.  Summary

For the reasons above, Defendants' motion for summary judgment will be denied on Stringer's claim for retaliation under the ADA based upon Crockett's statements at the district-wide meeting regarding an EEOC investigation, and on Stringer's retaliation claim under Title VII.  The motion will be granted as to the other allegations of retaliation under the ADA.

### D.  State Law Claim for Tortious Interference

In her amended complaint, Stringer asserts a claim for "tortious interference with business and/or contractual relations" against "Individual Defendants."  Doc. #16.  Generally, when a complaint asserts a claim of "'tortious interference with business and/or contractual relations,' [the] claim is more properly characterized only as for tortious interference with contractual relations."  *Henderson v. Barbour Int'l, Inc.*, No. Civ. A. 3:05-cv-34, 2006 WL 756001, at *3 n.3 (S.D. Miss. Mar. 20, 2006).

In their motion for summary judgment, Defendants address Stringer's claim as a claim for tortious interference with contract.  Doc. #26 at 27–28.  However, in her response to the motion for summary judgment, Stringer advises that the claim is not based on interference with a contract, but on "interfere[nce] with her business relationship with her employer."  Doc. #30 at 7.  Defendants' failure to file a reply leaves unaddressed Stringer's argument that the claim is one for interference with business relations, rather than interference with contract.  Defendants have

---

Where, as here, a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  A court may grant or deny leave to amend within its discretion and, in doing so, may consider several factors including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of … amendment, [and] futility of amendment."  *Forman v. Davis*, 371 U.S. 178, 182 (1962).  Here, there can be no doubt that Stringer knew of the nonrenewal long before responding to the motion for summary judgment and has not offered any explanation for the delay in raising the nonrenewal as a basis for ADA or Title VII retaliation.  Additionally, the Court concludes that the grant of amendment at this stage in the litigation would unduly prejudice Defendants.  *Linzy v. Sara Lee Corp.*, No. 1:10-cv-277, 2012 WL 1190907, at *3 n.6 (N.D. Miss. Apr. 10, 2012) (introduction of new discrimination claim following motion for summary judgment unduly prejudiced defendant).  Under these circumstances, leave to amend would be denied.

therefore failed to discharge their burden of pointing to an absence of material fact as to Stringer's interference claim.  Summary judgment on such claim will be denied.

**V**

**Conclusion**

For the reasons above, Defendants' motion for summary judgment [25] is **GRANTED in part and DENIED in part**.  Summary judgment is DENIED as to: (1) the ADA retaliation claim based on Superintendent Crockett's directive regarding participation in EEOC investigations; (2) the Title VII retaliation claims; (3) the Title VII pay discrimination claims based on Stringer having been denied raises in 2012 and 2013; and (4) the claim for tortious interference with business relations.  Summary judgment is GRANTED in all other respects.

**SO ORDERED**, this 14th day of January, 2016.

/s/ **Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**